UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Linda Orell, AKA Linda Lubov,<br>　　　*Plaintiff*,<br><br>　　　　　*v.*<br><br>Jeannine Muckle,<br>　　　*Defendant*. | Civil No. 3:11-cv-00097-<br>WWE |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Linda Orell brought a 42 U.S.C. § 1983 (2006) claim, as well as state law claims for assault, battery, and trespass, against Defendant Jeannine Muckle, a New Milford police officer, alleging that Defendant used excessive force when Plaintiff was in need of emergency medical assistance. Defendant now moves for summary judgment on Plaintiff's claims.  For the reasons that follow, Defendant's motion is will be denied.

## I.　　BACKGROUND

This action arises out of an encounter on the morning of February 3, 2009, between the Defendant, a New Milford police officer, and Plaintiff. Mr. John Orell, Plaintiff's husband, called 911, reported that Plaintiff was experiencing a seizure, and requested emergency medical assistance. (Pl.'s Local Rule 56(a)(2) Stmt. ¶¶ 3-4.) Paramedic Estelle Fazzone was dispatched to Plaintiff's residence, as were Emergency Medical Technicians Jen Caroti and Bill Keane. (*Id.* ¶¶ 5, 7.) Mr. Orell led all three responders to a bedroom where they observed Plaintiff, who appeared to be sleeping on her side in bed under a blanket, and noticed a small amount of a reddish secretion on Plaintiff's pillow that appeared to be blood. (*Id.* ¶¶ 9, 10.) Mr. Orell told the medical responders that Plaintiff had a history of substance abuse, that he had seen her taking some kind of pills the night before, and that he suspected plaintiff's condition was the result of her drug abuse. (*Id.* ¶ 12.)

Caroti and Keane had arrived with a stretcher that they positioned near the foot of the bed. (*Id.* ¶ 14.) Fazzone woke Plaintiff up easily with verbal stimuli and confirmed that Plaintiff was not experiencing any type of seizure, but, when Fazzone tried to pull the blanket off Plaintiff to assess her condition, Plaintiff cursed at Fazzone, yanked the blanket back over herself, and rolled over. (*Id.* ¶¶ 15-16.) Repeated attempts to provide medical treatment resulted in Plaintiff flailing her arms and cursing at the responders. (*Id.* ¶ 17.) The responders determined that Plaintiff needed to be transported to the hospital for evaluation. (*Id.* ¶ 22.) Fazzone radioed dispatch and requested police assistance in restraining Plaintiff for safe transport. (*Id.* ¶¶ 22-23.)

Defendant was dispatched in response to Fazzone's request for police assistance and, upon arrival, observed Plaintiff lying in bed. (*Id.* ¶¶ 27, 29.) The medical responders told Defendant about Plaintiff's condition and conduct, as well as Mr. Orell's concerns that Plaintiff was intoxicated. (*Id.* ¶ 30.) Defendant approached the bed and asked Plaintiff to get on the stretcher so she could be taken to the hospital. (*Id.* ¶ 31.) Plaintiff responded by screaming profanities at Defendant; Fazzone observed that Plaintiff was awake and conscious, and Keane noted that Plaintiff became increasingly agitated upon Defendant's arrival. (*Id.* ¶¶ 32-34.) Defendant then pulled the blanket back and ordered Plaintiff to get on the stretcher. (*Id.* ¶ 35.) Plaintiff then verbally abused Defendant before tapping Defendant on the lip and duty belt.[1] (Mot. for Summ. J. Ex. B ("J. Orell Dep."), at 42-48.)

Defendant subsequently ordered Plaintiff to calm down and cooperate several additional times, but Plaintiff sat up and began flailing her arms. (Pl.'s Local Rule 56(a)(2) Stmt. ¶¶ 38-39.) Defendant then warned Plaintiff that if she did not calm down Defendant would have no choice but to use her Taser to force Plaintiff's cooperation (*id.* ¶ 41); Mr. Orell did not expressly

---

[1] Officer Muckle asserts that Defendant kicked her in the legs and grabbed her duty belt. (Def.'s Local Rule 56(a)(1) Stmt. ¶ 36.) Given the posture of this matter, the Court resolves this factual dispute in Plaintiff's favor for purposes of this motion.

2

contradict this testimony (J. Orell Dep., at 47:8-10). Defendant then used her Taser against Plaintiff for five seconds; Plaintiff did not cooperate, and Defendant deployed her Taser for a second five-second cycle, then Defendant attempted to subdue Plaintiff physically, entangling the two.[2] (Pl.'s Local Rule 56(a)(2) Stmt. ¶¶ 46-50.) Defendant then requested Fazzone assist her in restraining Plaintiff, but, before they could do so, Plaintiff struck Defendant in the face, cutting her lip. (*Id.* ¶ 52, 55.) Defendant then asked Keane to assist her and Fazzone in restraining Plaintiff. (*Id.* ¶ 56.) Defendant was then able to handcuff Plaintiff, and, with the responders, move Plaintiff from the bed to the stretcher for transport to the hospital. (*Id.* ¶¶ 59-60, 65.) Plaintiff does not recall anything Defendant said during the incident, or that she said to Defendant, nor does Plaintiff recall the presence of the medical responders, including being restrained by them. *Id.* ¶¶ 70, 74-76.

## II.    STANDARD OF REVIEW

"Summary judgment is only appropriate when, construing all evidence in the light most favorable to the non-moving party," *Pabon v. Wright*, 459 F.3d 241, 247 (2d Cir. 2006), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law" and is "genuine" if "a reasonable jury could return a verdict for the nomoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315 (2d Cir. 2006).

---

[2] Officer Muckle asserts that she warned Defendant several more times both before and after removing her Taser from its holster, and again after the initial deployment of the Taser. (Def.'s Local Rule 56(a)(1) Stmt. ¶ 41, 43, 48.) Given the posture of this matter, the Court resolves this factual dispute in Plaintiff's favor for purposes of this motion.

III.     **DISCUSSION**

Defendant moves for summary judgment on all of Plaintiff's claims, arguing (1) she did not violate Plaintiff's constitutional rights, and (2) the doctrine of qualified immunity shields her from suit because a reasonable officer could conclude her actions were lawful under the circumstances. The Court concludes that the record contains genuine issues of fact with respect to whether Officer Muckle violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures by using excessive force and whether it would have been clear to a reasonable officer that this conduct was unlawful. Accordingly, the Court will deny Defendant's summary judgment motion on Plaintiff's excessive force and qualified immunity claims. Because these same factual disputes raise triable issues with respect to Plaintiff's state law claims of assault, battery, and trespass, the Court will also deny summary judgment as to Plaintiff's state law claims.

A.      Excessive Force

A claim by a citizen that law enforcement officials used excessive force is reviewed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). To determine the "objective reasonableness" of a particular use of force by a police officer, the Court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing interests at stake." *Id.* at 396 (internal citations and quotation marks omitted). This analysis requires careful attention to the individual circumstances present, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation omitted).

Here, Plaintiff asserts Defendant's use of her Taser to effectuate Plaintiff's transportation to the hospital was objectively unreasonable because: (1) prior to the use of the Taser Plaintiff was not actively resisting either the medical responders or Officer Muckle in a violent or threatening manner, (2) she was neither under arrest nor under suspicion of having committed a crime, and (3) she was arguably in need of emergency medical assistance. (*See* Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at 8-10; Compl. at 2-3.) The record evidence about how Defendant effectuated Plaintiff's transportation to the hospital, when viewed in the light most favorable to the Plaintiff, creates a triable factual issue about whether Defendant's use of her Taser was objectively reasonable under the circumstances. Summary judgment is therefore inappropriate in Defendant's favor on Plaintiff's excessive force claim.

First, a reasonable jury could conclude that Plaintiff was not actively resisting the medical responders or Defendant prior to Defendant's use of her Taser and that use of the Taser constitutes excessive force. It is undisputed that Plaintiff refused the medical responders' attempts to provide medical assistance upon arrival (Pl.'s Local Rule 56(a)(2) Stmt. ¶¶ 17), but a reasonable jury could find such resistance amounted to no more than verbal exhortations or admonishments laced with profanities, as opposed to physical violence actively directed at any of the medical responders. (*See* Mot. for Summ. J. Ex. D ("Fazzone Dep."), at 17:6-13 ("Like I said, she kind of pulled the blanket back over herself and kind of rolled over to her side and told us basically to get out."); Mot. for Summ. J. Ex. G, at 20:19-23 ("I don't recall if she initiated any physical contact, but she would pull away from us; and, you know, if you would try to touch her wrist or hold her wrist, she would yank her hand out and, you know, say something like, Leave me alone.").) Additionally, Defendant contends that Plaintiff both kicked her legs and grabbed onto her duty belt. But a reasonable jury, crediting Mr. Orell's testimony, could

determine that Plaintiff acted only after Defendant began the physical altercation without any threat or danger present. (*See* J. Orell Dep., at 42:2-4 ("First, the officer tried to get her to go and she kept saying no, so the officer started wrestling with her. And then that's when -- *the officer started first*.") (emphasis added).)

Second, a reasonable jury could find that, in the absence of a need to arrest Plaintiff or any suspicion that Plaintiff had committed a crime, Defendant's use of her Taser to effectuate Plaintiff's transportation to the hospital was not objectively reasonable. Defendant has pointed to no record evidence that Plaintiff was suspected of having committed a crime prior to Defendant's use of her Taser. In addition, Defendant had no reason to suspect Plaintiff was armed or dangerous. Accordingly, because it is undisputed that Plaintiff was not under arrest, suspected of criminal activity, and not known to be armed or dangerous, there is a material dispute of fact concerning whether Defendant needed to effectuate any seizure at all. *See Nelson v. City of Stamford*, No. 3:09-cv-1690 (VLB), 2012 WL 233994, at *6 (D. Conn. Jan. 25, 2012) (denying police officer's summary judgment motion on an excessive force claim because there was a material factual dispute regarding whether plaintiff *merely passively resisted arrest*). Thus, a reasonable jury could find that Defendant's use of her Taser in order to effectuate a seizure was not objectively reasonable.

Finally, a reasonable jury could determine that Defendant's use of her Taser was not objectively reasonable when she knew Plaintiff was potentially in need of emergency medical assistance. It is undisputed that the medical responders told Defendant about Plaintiff's medical condition upon arrival. (Pl.'s Local Rule 56(a)(2) Stmt. ¶ 30.) Additionally, Defendant had been dispatched to Plaintiff's location based on Plaintiff's reported seizure and knew that Plaintiff had possibly overdosed on drugs. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., Ex. F ("Muckle

Dep."), at 53:9-54:23.) Consequently, a reasonable jury could conclude that, in light of Defendant's knowledge of Plaintiff's arguable need for emergency medical assistance, Defendant's use of her Taser was unreasonable.

Accordingly, there are genuine issues of fact that remain for trial about whether Defendant applied reasonable force under the circumstances. When viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could conclude that Defendant used an objectively unreasonable level of force. Therefore, because triable issues exist on Plaintiff's excessive force claim, summary judgment is not proper in Defendant's favor.

    B.    Qualified Immunity

Defendant argues that, even if disputed factual issues remain on Plaintiff's excessive force claim, summary judgment is proper in her favor because the doctrine of qualified immunity shields her from liability. The Court concludes that sufficient factual disputes exist about whether it was objectively reasonable for Officer Muckle to believe that using her Taser to effectuate Plaintiff's transport to the hospital did not violate Plaintiff's Fourth Amendment rights. These triable issues therefore preclude summary judgment on the basis of qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity provides a shield to police officers from such liability only where the facts alleged show that an officer's conduct did not violate a clearly established constitutional right, such that "it would be clear to a reasonable officer that his conduct was [not] unlawful in the situation he confronted."

*Saucier v. Katz*, 533 U.S. 194, 201-202 (2001). As long as immunity questions are resolved "at the earliest possible stage in litigation," *Pearson*, 555 U.S. at 232, a court may analyze whether a defendant is entitled to such protection in any order "in light of the circumstances in the particular case at hand," *id.* at 232. Consequently, a defendant is entitled to qualified immunity if "(1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008) (citations omitted). The defense of qualified immunity is an affirmative defense and a Defendant must prove that it would be clear to a reasonable officer that her conduct was objectively reasonable. *See Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012) (noting that qualified immunity is an affirmative defense for which defendants have the burden of proof).

### 1.    Violation of a Clearly Established Constitutional Right

Officer Muckle is not entitled to qualified immunity on the grounds that the right to be free from unreasonable seizure by use of excessive force was not clearly established at the time of the incident. The right to be free from unreasonable seizure by use of excessive force was clearly established as of February 3, 2009. *See, e.g.*, *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).

### 2.    Objectively Reasonable Conduct

The record also indicates that there are triable issues concerning whether it would have been clear to a reasonable officer that Officer Muckle acted unlawfully. A reasonable juror crediting Plaintiff's evidence could find that the level of force Officer Muckle used to detain Plaintiff to transport her to the hospital was unreasonable. *See* discussion *supra* at 4-7. Additionally, Officer Muckle testified that the police department had not provided training about

either how to use a Taser on a subject experiencing a seizure or whether it is reasonable to do so, and stated that "if I know somebody is having a seizure, if I can tell they're having a medical issue, [the Taser] wouldn't be my first choice." (Muckle Dep. at 32:16-33:11.) Because Defendant has not provided sufficient evidence that compels the conclusion, as a matter of law, that it was objectively reasonable for Defendant to believe her conduct was lawful, she is not entitled to summary judgment on qualified immunity grounds. *See, e.g.*, *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. Jan. 7, 1999) ("Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." (citations omitted)).

      C.      Assault and Battery

Defendant additionally argues that for Plaintiff to prevail on her claims of assault and battery, Plaintiff must show that Defendant applied unlawful force. (*See* Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. at 29.) Defendant also argues that, because Plaintiff's state law assault and battery claims are derivative of her federal excessive force claim, the state law claims necessarily fail if the excessive force claim fails. (*See id.* at 28.) Because the Court has concluded that there are genuine material factual disputes regarding whether Defendant used excessive force in effectuating Plaintiff's transport to the hospital, Defendant's motion for summary judgment is also denied as to the claims of assault and battery. *See Ochoa v. City of West Haven*, 3:08cv00024 (DJS), 2011 WL 3267705, at * (D. Conn. July 29, 2011) (denying summary judgment on plaintiff's assault and battery claims on the basis of unresolved factual disputes regarding plaintiff's excessive force claim).

D.     Trespass

Finally, Defendant argues that she is entitled to summary judgment on Plaintiff's common law trespass claim. A cause of action for trespass *vi et armis* under Connecticut law arises when a defendant negligently exerts a force that directly causes injury to another if the act was wanton. *See Lentine v. McAvoy*, 136 A. 76, 77 (Conn. 1927) (holding that a police officer committed trespass to the person even when the action causing injury was unintentional because he wantonly exerted force); *see also Welch v. Durand*, 36 Conn. 182, 185 (1869) (determining that it is immaterial in an action for trespass *vi et armis* whether the resulting injury was intentional, as long as the action causing such injury was done wantonly); *Ashley v. Ritter Finance Co.*, 29 Conn. Supp. 503, 504-05 (Conn. C.P. May 17, 1972) (concluding that the defendant's mere negligence in pushing or forcing the plaintiff backwards thereby causing her to fall was sufficient to sustain an action for trespass *vi et armis*). Because there are unresolved material factual questions about whether Defendant's conduct violated a clearly established right, there remain unanswered material factual questions as to whether Defendant acted wantonly. Summary judgment is not proper.

## IV. CONCLUSION

For the reasons stated above, the Defendant's Motion for Summary Judgment [Doc. # 27] is DENIED.

Dated at Bridgeport, Connecticut this 6th day of August, 2012.


_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE